J-A20041-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| WILLIAM KING | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| VS WALLINGFORD, LLC D/B/A | : | No. 3217 EDA 2024 |
| RESIDENCE AT CHESTNUT RIDGE | : | |

Appeal from the Judgment Entered January 31, 2025
In the Court of Common Pleas of Delaware County Civil Division at
No(s):  CV-2021-006161

BEFORE:   MURRAY, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.:         **FILED OCTOBER 14, 2025**

William King appeals from the judgment entered in the Court of Common Pleas of Delaware County after a jury returned a verdict in favor of VS Wallingford, LLC d/b/a Residence at Chestnut Ridge ("Chestnut Ridge"). King challenges the court's entry of a directed verdict, admission of evidence, and the weight of the evidence. After review, we affirm and separately deny Chestnut Ridge's application for relief as moot.

On March 14, 2018, King was hired as maintenance director at Chestnut Ridge, a thirteen-floor assisted living facility in Chester, Pennsylvania. **See** N.T. Trial, 8/26/24, at 141, 143-144; Plaintiff's Trial Exhibit 8 (King's Hiring Letter). On May 10, 2019, King was removing a trash container from the trash

_____

[*] Retired Senior Judge assigned to the Superior Court.

compactor. *See* N.T. Trial, 8/26/24, at 139. As he was pulling the container down the hallway, King slipped and twisted his knee. *See id.* at 139. At the time of his injury, King reported it to two Chestnut Ridge employees, Executive Director Amy Gress and Assistant Executive Director Ieshia Tann. *See id.* at 139-40. Around that time, Tann provided King with workers' compensation forms to fill out. *See id.* at 140; Plaintiff's Trial Exhibit 22 (Workers' Compensation Forms).

On May 14, 2019, King was examined by a doctor, and he was approved to return to work but with limitations necessitating, *inter alia*, that he sits for seventy-five percent of his work shift with his right leg elevated. *See* N.T. Trial, 8/26/24, at 159. These work restrictions were documented in a worker's capability form, which King provided to Gress. *See id.* at 164; Plaintiff Trial Exhibit 23 (Worker's Capability Form). From May 10 to July 21, 2019, King was able to attend all medical appointments and therapy sessions during his recovery. *See id.* at 167. King also received a raise in June 2019. *See id.* at 144.

On July 1, 2019, Kyle Duffy was hired as the new executive director at Chestnut Ridge. *See* N.T. Trial, 8/27/24, at 7. Barbara Putman was his operations manager, and Duffy oversaw approximately eighty employees. *See id.* at 35.[1] Three weeks later, Chestnut Ridge allowed King to work on July 21

_____

[1] Putman's name on the record appears as "Putman" and "Putnam."

and have off on July 22 to attend a magnetic resonance imaging ("MRI") appointment with an orthopedic specialist. *See* N.T. Trial, 8/26/24, at 148-49. At the end of the MRI appointment, King was told that he needed a follow-up appointment to review the MRI scans. *See id.* at 163. However, King did not schedule a follow-up appointment at that time. *See id.* He was eventually diagnosed with a meniscus tear and later had surgery on August 2, 2019. *See id.* at 149.

On July 23, 24, and 25, 2019, King called out of work at the start of each day and notified Duffy on July 23 that his knee was still bothering him. *See* N.T. Trial, 8/26/24, at 161, 170. On July 23 and 24, Duffy sent emails to King asking for supporting medical documentation to excuse his two-day absence. *See* N.T. Trial, 8/26/24, at 171-73; Plaintiff Trial Exhibit 15 (7/23/23, Duffy to King Email); Plaintiff Trial Exhibit 17 (7/24/23, Duffy to King Email). Duffy needed a new doctor's note because the only one on file stated King could be at work. *See* N.T. Trial, 8/26/24, at 177-78. King did not send Duffy any new medical documentation. *See id.* at 162-63. On July 26, 2019, King did not show up to work and did not call in. *See* N.T. Trial, 8/27/24, at 9-10.[2]

---

[2] Chestnut Ridge's employee handbook explicitly states that an employee is automatically terminated for a "no-call" and "no-show" on a scheduled workday. *See* N.T. Trial, 8/26/24, at 149.

At 10:27 AM, on July 26, 2019, Duffy sent a text message to Putman regarding King's absence and failure to provide notice. ***See id.*** at 42; Plaintiff Trial Exhibit 19 (Duffy and Putman Text Messages). Putman instructed Duffy to proceed with King's termination. ***See id.*** The text messages between Duffy and Putman read as follows:

> **DUFFY:** [King] hasn't provided me with the doctor's note, has been out all week, and was a no call no show today. How should I proceed since he's claiming he has a work injury[?]
>
> **PUTMAN:** Did he fill out [a] worker[']s comp[ensation] form? Did his doctor paperwork say he was off work? Do we know who [the] doctor is?
>
> **DUFFY:** [The o]nly worker[']s comp[ensation] info[rmation] in his file is from 5/10/19[.] No doctor's paperwork saying he was off work. I asked him multiple times for it.
>
> **PUTMAN:** Well[,]no call no show is termination.

Plaintiff Trial Exhibit 19 (Duffy and Putman Text Messages).

On July 26, 2019, King was terminated for not calling nor showing up that day, which was considered in tandem with his unexcused absences from July 22 to July 25. ***See*** N.T. Trial, 8/26/24, at 152-53, 163; Plaintiff Trial Exhibit 10 (King Termination Letter). On July 16, 2021, King filed a complaint against Chestnut Ridge, asserting (1) disability discrimination; (2) hostile work environment; (3) failure to accommodate; and (4) wrongful termination/retaliation.[3] ***See generally***, Complaint, 7/16/21. The jury trial

_____

[3] King asserted all his claims under the Pennsylvania Human Relations Act ("PHRA"). ***See*** 43 Pa.C.S. §§ 951 *et seq*. Generally, our court analyzes PHRA
*(Footnote Continued Next Page)*

was conducted on August 26 and 27, 2024. King testified on his own behalf and cross-examined Duffy. *See* N.T. Trial, 8/26/24, at 138-61; N.T. Trial, 8/27/24, at 7-38. He argued all four claims from his complaint, and after he rested, Chestnut Ridge orally moved for a directed verdict. *See* N.T. Trial, 8/27/24, at 48. King subsequently withdrew his hostile work environment and failure to accommodate claims. *See id.* at 49-51. At the complaint's remaining counts, King's claims of disability discrimination and wrongful termination, the trial court denied Chestnut Ridge's motion for directed verdict without prejudice. *See id.*

On August 27, 2024, Chestnut Ridge called Duffy as a witness, rested, and then renewed its oral motion for a directed verdict as to the two remaining claims*. See id.* at 54-58. The trial court granted the directed verdict on the wrongful termination claim and permitted the disability discrimination claim to be presented to the jury. *See id.* at 65-66. After deliberation, the jury returned a verdict in favor of Chestnut Ridge on the disability discrimination claim. *See* N.T. Trial, 8/27/24, at 117; Jury Verdict, 8/28/24, at 1. On September 6, 2024, King filed a timely amended motion for post-trial relief, to which Chestnut Ridge filed an answer in opposition on October 24, 2024. The trial court entered an order denying King's post-trial motion. *See* Order (Denying Post-Trial Motion), 11/27/24. On November 27, 2024, King filed a

---

claims by using the same standards as employed in the analogous federal statutes. *See Ferraro v. Temple Univ.*, 185 A.3d 396, 402 n.3 (Pa. Super. 2018).

timely notice of appeal. *See* Order (Notice of Appeal), 11/27/24. On January 31, 2025, judgment was entered in favor of Chestnut Ridge. The trial court did not order King to file a concise statement pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), but it nevertheless filed a Rule 1925(a) opinion. *See generally*, Trial Court Opinion, 1/27/25.

On appeal, King raises the following questions for our review:

1. Should [this] Court enter an order reversing the trial court's decision denying [King] a new trial where the trial court improperly granted [Chestnut Ridge's] [m]otion for [d]irected [v]erdict on [King's] claim for wrong[ful] termination?

2. Should [this] Court enter [] an [o]rder reversing the [t]rial [c]ourt's decision denying [King a] new trial on [his] claim for discrimination where the trial court improperly excluded relevant and admissible evidence?

3. Should [this] Court enter an [o]rder reversing the [t]rial [c]ourt's decision denying [King] a new trial[,] where the jury verdict was against the weight of evidence?

4. Should [this] Court enter an [o]rder reversing the [t]rial [c]ourt's decision denying [King's] [m]otion for [j]udgment [n]otwithstanding the verdict because the jury verdict was against the weight of the evidence?

Appellant's Brief, at 6-7.

First, King argues that a new trial should be granted because the trial court improperly granted Chestnut Ridge's motion for directed verdict on his wrongful termination claim. *See* Appellant's Brief, at 14. Chestnut Ridge argues that King waived this claim because he did not specifically object to the directed verdict during trial. *See* Appellee's Brief, at 4-6. Upon review of the record, we find that King waived this issue.

Our Supreme Court has long held that to preserve an issue for appellate review, a litigant must place a timely, specific objection on the record. ***See Jones v. Ott***, 191 A.3d 782, 786 (Pa. 2018); ***Straub v. Cherne Indus.,*** 880 A.2d 561, 566 (Pa. 2005). Issues that are not preserved in the trial court are waived on appeal. ***See*** Pa.R.A.P. 302(a). Additionally, in an appellate brief, there must be a statement of the place of raising or preservation of issues. ***See*** Pa.R.A.P. 2117(c). This information must also be referenced in the argument portion of the appellate brief. ***See*** Pa.R.A.P. 2119(e).

Here, our review of the record reveals that King neither specifically objected to nor offered a relevant legal theory at trial on Chestnut Ridge's second oral motion for a directed verdict. ***See*** N.T. Trial, 8/27/24, at 58-66. Moreover, King's brief does not point to the place in the record where King made any contemporaneous objection to the trial court's decision on the directed verdict. ***See*** Appellant's Brief, at 14-20. Additionally, in King's reply brief, he argues that Chestnut Ridge did not cite any authority that allows this Court to find he waived this issue. ***See*** Appellant's Reply Brief, at 2-5. However, King fails to acknowledge or cite our rules of appellate procedure. ***See*** Pa.R.A.P. 2117(c), 302(a). Therefore, we conclude that King's first issue is waived.

In his second issue, King asserts that the trial court erred by excluding from evidence his doctor's medical notes.[4] **See** Appellant's Brief, at 22; **see also** Plaintiff's Trial Exhibit 25 (King's Progress Notes); Plaintiff Trial Exhibit 31 (Note from King's Doctor). He argues the trial court improperly excluded the exhibits because they were relevant and admissible, causing potential prejudice. **See** Appellant's Brief, at 22. King further argues that Exhibits 25 and 31, as medical records, qualify under the hearsay exception for business records of a regularly conducted activity. **See** Appellant's Brief, at 23-24. King cites **Folger ex rel. Folger v. Dugan**, 876 A.2d 1049, (Pa. Super. 2005), for the proposition that medical records are admissible under the business records exception to the general rule against the admission of hearsay to prove facts, though not medical opinions or diagnoses. **See** Appellant's Brief, at 23 (citing **Dugan,** 876 A.2d at 1055).

_____

[4] King argues the trial court erred in excluding Plaintiff Trial Exhibits 23 (Lackawanna Insurance Group Acknowledgment of a Workers' Compensation Claim), 24 (King's Medical Records), and 36 (King's Petition for Appeal to Unemployment Compensation Board of Review). **See** Appellant's Brief, at 21. However, the record establishes that for Exhibit 23, the parties stipulated for limited purposes of acknowledging that a workers' compensation claim was submitted. **See** N.T. Trial, 8/26/24, at 131. Additionally, King withdrew Exhibits 24 and 36 during trial. **See id.** at 133, 136; Trial Court Opinion, 1/27/25, at 7 ("As [t]his [trial] court further reviewed [King's] proposed exhibits, [h]is counsel stated on the record that exhibits 24 and 36 were not going to be used."). King, in his reply brief, omits any argument concerning Exhibits 23, 24, and 36, without any acknowledgement of Chestnut Ridge's argument or the trial court opinion. **See** Appellant's Reply Brief, at 8-11. Accordingly, this Court will not consider King's arguments for Exhibits 23, 24, and 36.

The well-established standard of review regarding the admission or exclusion of evidence is very narrow:

> These matters are within the sound discretion of the trial court, and we may reverse only upon a showing of abuse of discretion or error of law. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. In addition, to constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Zuk v. Zuk*, 55 A.3d 102, 112 (Pa. Super. 2012) (citing *Jacobs v. Chatwani*, 922 A.2d 950, 960 (Pa. Super. 2007)).

The Pennsylvania Rules of Evidence provide that, generally, all relevant evidence is admissible, *see* Pa.R.E. 402, and that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. A court "may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

Hearsay is an out-of-court statement offered for the truth of the matter asserted and is inadmissible unless it falls within an exception to the hearsay rule. *See Commonwealth v. Manivannan*, 186 A.3d 472, 482 (Pa. Super. 2018); Pa.R.E. 801(c), 802.

Regarding hearsay's business record exception, our Court has stated:

> To satisfy the business record exception the testifying witness need not be the custodian of the record or have personal knowledge of the facts reported in the business record.
>
> Instead, "[a]s long as the authenticating witness can provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness of the business records of a company, a sufficient basis is provided to offset the hearsay character of the evidence."

***Commonwealth v. Nabried***, 327 A.3d 315, 322 (Pa. Super. 2024) (quoting

***Commonwealth v. McEnany***, 732 A.2d 1263, 1272 (Pa. Super. 1999)).

With respect to the arguments regarding relevance and potential prejudice concerning Exhibits 25 and 31, our review of the record reveals no abuse of discretion in the trial court's determinations. ***See Zuk***, ***supra***. The trial court afforded both parties a full opportunity to present evidence relating to the date of injury, medical appointments, procedures, and diagnosis. ***See*** Trial Court Opinion, 1/27/25, at 7; N.T. Trial, 8/27/25, at 163, 166, 168-69, 178-79. Next, we consider King's hearsay argument. Instantly, the trial court, in its Rule 1925(a) opinion, explained that it excluded Exhibits 25 and 31 because they were medical records, and a records custodian was not available to testify. ***See*** N.T. Trial, 8/26/24, at 133-34; Trial Court Opinion, 1/27/25, at 7-8. Our assessment of the record leads to the same conclusion: King did not present any witness who could authenticate or provide sufficient information about Exhibits 25 and 31. ***See*** N.T. Trial, 8/26/24, at 133-34; ***Nabried***, ***supra***. Furthermore, we conclude that ***Dugan*** is inapplicable here because the trial court allowed King to testify about the facts in Exhibits 25

and 31. *See Dugan*, 876 A.2d at 1055; *see also* N.T. Trial, 8/26/24, at 133-34.

In particular, King was able to inform the jury of his medical appointment on August 2 and that he received a note related thereto. *See* N.T. Trial, 8/26/24, at 149-50. Moreover, King's counsel did not enter into evidence the date of July 15, 2019, associated with Exhibit 25, nor did counsel reference those progress notes at trial. Therefore, we find that the trial court rulings on Exhibits 25 and 31 were not erroneous and did not cause prejudicial harm to King. *See Parr v. Ford Motor Co.*, 109 A.3d 682, 697 (Pa. Super. 2014) ("[I]n order for a trial court's ruling on an evidentiary matter to constitute reversible error requiring the grant of a new trial, the ruling must be both legally erroneous and harmful to the complaining party."). As a result, King's claim lacks merit.

Finally, King combines his third and fourth appellate issues into one section of his brief and contends that he should be granted a new trial because the trial court erred when it entered the jury verdict against the weight of evidence and refused to enter judgment notwithstanding the verdict. *See* Appellant's Brief, at 25. He avers in **one paragraph** that "the defense verdict was in stark contrast to available evidence." *Id.* We find King has waived both issues.

Appellate briefs are required to conform to our appellate rules. *See* Pa.R.A.P. 2101. King failed to divide issues three and four into separate headings pursuant to Pennsylvania Rule of Appellate Procedure 2119(a). *See*

Appellant's Brief, at 25; Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."). Also, King sets forth no argument for either of his issues and presents no relevant citations to these points within his brief. **See** Appellant's Brief, at 25. Instead, he only offers a generic statement that simply restates his previous claims as a challenge to the weight of evidence. **See id.** We will not consider an argument where an appellant fails to cite any legal authority or otherwise develop the issue; failure to develop an issue results in waiver. **See In re C.R.**, 113 A.3d 328, 335-36 (Pa. Super. 2015); **Milby v. Pote**, 189 A.3d 1065, 1079 (Pa. Super. 2018).

Additionally, King attempts to supplement his argument on both issues in his reply brief. **See** Appellant's Reply Brief, at 11-21. However, his reply brief fails to conform to Pennsylvania Rule of Appellate Procedure 2113(a) because it improperly bolsters arguments presented in his original brief. **See M.C.M. v. Milton S. Hershey Med. Ctr. of PA State Univ.**, 834 A.2d 1155, 1557 (Pa. Super. 2003) (holding reply briefs may not reargue issues previously raised in advocate's original brief); Pa.R.A.P. 2113(a) (stating appellant may file a brief in reply to matters raised by appellee's brief). Accordingly, King's third and fourth issues are waived on appeal. **See Lackner v. Glosser**, 892 A.2d 21, 29–30 (Pa. Super. 2006) (stating failure to offer analysis or case citation in support of relief results in waiver).

Judgment affirmed. Application for relief denied as moot.[5]

Judge Murray joins the memorandum.

Judge McLaughlin concurs in the result.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/14/2025

_____

[5] Chestnut Ridge filed an application for relief for permission for leave to file a sur-reply. **See** Application for Relief, 7/8/25, at 2. Given our disposition, we do not find the sur-reply necessary for consideration of the issues presented in this appeal and deny it as moot.