J-A12037-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JOHN C. MIRABELLA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ST. JOSEPH'S UNIVERSITY, AND | : | No. 1818 EDA 2024 |
| M.W. | : | |

Appeal from the Judgment Entered June 28, 2024
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 190509002

BEFORE: STABILE, J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:               **FILED FEBRUARY 20, 2026**

John C. Mirabella ("Mirabella") appeals from the judgment entered against him and in favor of Saint Joseph's University ("SJU") and M.W., ("the victim") (collectively, "Appellees"), in this action for breach of contract, defamation, and violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL").[1]  For the reasons discussed below, we affirm.

We take the underlying facts and procedural history in this matter from our review of the certified record and a previous, federal court decision involving the parties.  In February 2018, Mirabella and the victim met at an off-campus party.  **See Doe v. St. Joseph's University**, 2019 WL 13246870,

_____

[1] **See** 73 P.S. 201-1, *et seq*.

at *3 (E.D. Pa. Apr. 23, 2019).[2] The two flirted, kissed, exchanged cell phone numbers, and ultimately left the party together. *See id*. They returned to SJU and went to a common room in Mirabella's dormitory. *See id*. They began to kiss, and, while kissing, Mirabella squeezed the victim's neck hard enough to frighten her and leave bruises. *See id.* Mirabella left the room, and the victim texted a friend seeking assistance. *See id*. When Mirabella returned, the victim told him she had to go help a sick friend. *See id*. Mirabella walked her out, they kissed, and a friend walked her home. *See id.*

The following Monday, the victim disclosed the incident to Katie Bean ("Ms. Bean"), the Assistant Director in SJU's Office of Student Outreach and Support, with whom the victim worked part-time. *See id*. Ms. Bean explained she was required to report the incident, and she and the victim reported it to SJU's Title IX Coordinator Dr. Mary-Elaine Perry ("Dr. Perry"). *See id*. The victim filed a sexual misconduct complaint against Mirabella. Dr. Perry drafted the short complaint, which stated the parties "began making out, which was fine, then somehow [Mirabella] put his hand on her throat [and] began squeezing her neck. She felt that she could not breathe." *See id*. Dr. Perry forwarded the complaint to William Bordak ("Mr. Bordak"), Director of SJU's Office of Community Standards, and that office began the investigation into the allegations against Mirabella. *See id*.

_____

[2] The parties and the trial court all cite to this action, acknowledging Mirabella is the John Doe named in the complaint.

- 2 -

Beginning in 2015, SJU's Sexual Misconduct Policy ("SMP") governed sexual assault investigations and discipline. *See id*. at *1. The SMP describes SJU's policy on sexual misconduct, the relevant procedures, the resources available to students, and the possible sanctions for violations. *See* SJU SMP at 3.

The SMP defines "sexual assault" as "[h]aving sexual intercourse or *sexual physical contact* with another individual by the use or threat of force or coercion, without consent, or where the individual is incapacitated." *Id*. at 6 (emphasis added). Sexual assault includes "any *non-consensual* sexual contact, including *any improper touching of intimate body parts*." *Id*. at 7 (emphases added).

The SMP encourages people who believe they have been sexually assaulted to report such conduct to an on-campus agency, such as SJU's Title IX Coordinator. *See id*. at 16–19. After receiving a report of alleged misconduct, the Title IX Coordinator reviews the allegations with SJU's Office of Community Standards. *See id*. at 29. If found appropriate, SJU begins an investigation and assigns an *independent investigator* to investigate the allegations. *See id*. at 30 (emphasis added). Both parties have the right to: (1) object to the investigator; (2) meet with an SJU staff member one-on-one to discuss the disciplinary process; (3) retain an advisor; and (4) seek an accommodation if disabled. *See id*. at 30–32.

The duty of the investigator is to speak to the parties and any witnesses, review any documents/evidence, and prepare a report for SJU opining whether a preponderance of the evidence supports the alleged violation. *See id*. at 29–31, 33. If the investigator finds there was a violation, the accused student is deemed "responsible." *See id*. at 33.

If a student is deemed "responsible," SJU can impose a variety of sanctions, including expulsion, suspension, probation, writing assignments, and required programming. *See id*. at 34. Either party can appeal the outcome of the investigation to a panel of SJU's Appeal Board, and the opposing party can respond. *See id*. at 35–38. The appealing party has the chance to review the opposing party's response but cannot respond to it. *Id*. at 37. SJU publicizes the SMP, in part, by requiring incoming undergraduate students to attend a presentation which teaches them about the SMP and how to deal with sexual misconduct on campus. *See Doe*, *supra*, at *2.

In the instant matter, SJU appointed Elizabeth Malloy ("Attorney Malloy"), an attorney who had completed more than a dozen Title IX investigations for SJU, as well as Title IX investigations for other entities, to investigate the complaint. *See id*. at *3. Neither party objected to Attorney Malloy's appointment. *See id*.

In early March 2018, Elizabeth Forte ("Ms. Forte"), the Assistant Director of SJU's Office of Community Standards, notified Mirabella about the complaint. *See id*. Mirabella subsequently received a Notice of Process Letter

advising him of the filing of the complainant and date of the alleged incident. *See id*. Approximately four days later, SJU imposed a contact restriction between the parties. *See id*.

The next day, Ms. Forte and Mirabella met; she gave and discussed with him a checklist summarizing SJU's disciplinary process and his rights. *See id*. Mirabella initialed each paragraph of the checklist. *See id*. However, in accordance with SJU policy, Ms. Forte did not provide Mirabella with a copy of the victim's complaint, the written charges against him, or otherwise elaborate on the allegations beyond explaining Mirabella was "rough" with the victim. *See id*.[3]

Attorney Malloy investigated the allegations. *See id*. at *4. Prior to his meeting with Attorney Malloy, Mirabella texted her his memories of the events. *See id*. Mirabella noted, "I wonder if I was holding her in some way that felt forceful or aggressive because, although that was not my intent, it clearly made [her] uncomfortable." *See id*. (citation omitted).

In mid-March 2018, Attorney Malloy separately interviewed both parties. *See id*. Attorney Malloy explained the victim's allegations to Mirabella. *See id*. In response, Mirabella accepted responsibility for his actions. Although he did not recall squeezing the victim's neck, he also stated

---

[3] Although Mirabella suffers from ADHD, he did not request or receive a disability accommodation. *See id*.

he did not want to call her a liar. *See id*. (citation omitted) (quoting Mirabella's statement, "I don't remember squeezing [her] neck. She didn't say [she was] uncomfortable. I take full respons[ibility]. I take this as a learning opportunity. I didn't realize she was leaving [because] of this").

In addition to interviewing the parties, Attorney Malloy examined the SMP, photographs of the victim's bruises, text messages, and notes provided by both Mirabella and the victim. *See id*.

In early April 2018, Attorney Malloy submitted her report to SJU, finding by a preponderance of the evidence Mirabella was responsible for sexual assault because it was more likely than not he squeezed the victim's neck without her consent. *See id.* Attorney Malloy concluded Mirabella's actions fell within the SMP's definition of sexual assault because it occurred while the parties were kissing. *See id*. Attorney Malloy stated that while the victim consented to kissing, she did not consent to Mirabella's squeezing her neck. *See id*. Attorney Malloy averred because the victim accused Mirabella of squeezing her neck "to the point where it left bruises," this was "a singular, separate act which required [the victim's] consent." *Id*. (citation omitted).

After receipt of Attorney Malloy's report, SJU placed Mirabella on one year of disciplinary probation and required him to write a paper and review online materials addressing sexual assault. *See id*. SJU forbade Mirabella from participating in a class trip to Ireland but permitted him to perform an alternate assignment for grading purposes. *See id*.

In mid-April 2018, Mirabella filed an appeal with the Office of Student Life. *See id*. The victim, Ms. Malloy, Mr. Bordak, and Ms. Forte all filed responses to the appeal. *See id*. Subsequently, Mirabella asked to see the victim's response and, for the first time, requested accommodation for his ADHD. *See id*. SJU denied Mirabella's appeal before he reviewed the victim's response. *See id*.

In May 2018, Mirabella filed an action against SJU and the victim in federal court, claiming violations of Title IX and state law. *See id*. at *5. Mirabella also filed a motion for a temporary restraining order ("TRO"), asking the court to order SJU to allow him to attend his class trip to Ireland. The federal court denied the TRO. *See id*. In July 2018, all parties moved for summary judgment. After delays, the parties renewed the motions for summary judgment in September 2018. *See id*. The court granted SJU's motion for summary judgment on Mirabella's Title IX claims but declined to address the state law claims against either SJU or the victim, dismissing them without prejudice to their refiling in state court. *See id*. In so doing the federal district court stated, "In attacking SJU's disciplinary proceedings, [Mirabella] generates more heat than light and effectively asks [the court] to retry these proceedings." *Id*. at *6. Throughout its decision, the federal district court repeatedly castigated Mirabella for his misstatements of relevant law and lack of any evidence to support his claims. *See id*. **6-14. Mirabella appealed, and the United States Court of Appeals for the Third Circuit denied

his appeal on the merits. ***See Doe v. St. Joseph's University***, 832 Fed.Appx. 770 (3d. Cir., Oct. 27, 2020).

In late May 2019, Mirabella filed a motion to transfer his case to the Philadelphia County Court of Common Pleas. ***See*** Trial Court 1925(a) Opinion, 9/23/24, at 2. The case was placed on deferred status pending the Third Circuit's decision. ***See id***. In November 2021, the parties stipulated to the dismissal of Mirabella's state law claims asserting intentional and negligent infliction of emotional distress. In October 2023, the trial court ruled on twenty-one motions *in limine* pending before it. ***See id***. In one of its rulings, it removed Mirabella's UTPCPL claims from the jury's consideration. ***See id***.

The court held a concurrent jury/bench trial in late October 2023. ***See id***. On November 6, 2023, the jury returned a unanimous verdict in favor of SJU and the victim on all claims. ***See id***. The trial court then requested both parties submit proposed findings of fact on the remaining UTPCPL claim; on November 29, 2023, the trial court entered a verdict in favor of SJU on the UTPCPL claim. ***See id***. at 2-3.

On November 20, 2023, Mirabella filed a post-trial motion relating solely to the jury claims. ***See id***. at 3. Subsequently, SJU and the victim objected to the motion as untimely filed. ***See id***. Mirabella filed a response arguing the motion was not untimely filed because the ten-day period did not start until the prothonotary entered the verdict on the docket. ***See*** Mirabella's Supplement to Post-Trial Motion, 3/19/24, at 2-3. In early December 2023,

Mirabella filed a timely post-trial motion relating to the UTPCPL claim.[4] **See** Trial Court 1925(a) Opinion, 9/23/24, at 3. Both post-trial motions were denied by operation of law in mid-March 2024. The victim filed a praecipe for judgment and the trial court entered judgment in favor of SJU and the victim on the jury verdict in late March 2024. **See id**.

Mirabella then filed a notice of appeal related solely to the jury verdict, and a Rule 1925(b) statement which only raised claims relating to the jury verdict. **See id**. at 3. In August 2024, this Court quashed the appeal, finding Mirabella had waived all claims on appeal because of his untimely post-trial motion. **See** Order, 8/5/24, at 2. Mirabella moved for reconsideration, arguing **for the first time** that his post-trial motion was timely because this was a bifurcated trial, and he was not required to file post-trial motions until after the announcement of the full verdict. **See** Application for Reconsideration, 8/13/24, at 5-6.

In the interim, the prothonotary had entered a second judgment on the UTPCPL claim and Mirabella had filed a second appeal, and a Rule 1925(b) statement related to the UTPCPL claim. **See** Trial Court 1925(a) Opinion, 9/23/24, at 3.

_____

[4] At oral argument, in response to a question by this Court, Mirabella claimed he had reasserted in his post-trial motion challenging the non-jury verdict on his UTPCPL judgment the claims made in his initial post-trial motion challenging the jury verdict. We have reviewed the motion in question and determined Mirabella's statement to be inaccurate. **See** Mirabella's Second Motion for Post-Trial Relief, 12/11/23, at 1-6 (unnumbered).

To resolve the procedural confusion, this Court granted reconsideration, reinstated the first appeal, vacated the first entry of judgment, dismissed the first appeal as duplicative of the second appeal, allowed Mirabella to raise issues relating to both the jury claims and UTPCPL claims in this appeal, and reserved the issue of the timeliness of his post-trial motions for this panel. *See* Order, 8/14/24, at 1-2. The trial court authored a lengthy opinion addressing all of Mirabella's claims. *See* Trial Court 1925(a) Opinion, 9/23/24, at 1-97.

Mirabella raises eight issues for our review:

**QUESTION NO. 1:** Whether the trial court erred when it disregarded this Court's decision in **Boehm** [**v. Univ. of Pa. School of Veterinary Med.**, 573 A.3d 575 (Pa. Super. 1990)] and refused to instruct the jury as to the ordinary meaning of the undefined contractual terms "fair" and "impartial" applicable to student disciplinary investigations?

**QUESTION NO. 2:** Whether the trial court committed error in pretrial rulings and subsequent evidentiary rulings regarding the [trial c]ourt's interpretation of the terms of the contract[?]

**QUESTION NO. 3:** Whether the trial court erred by ruling [Mirabella] could not introduce evidence, question witnesses, or argue to the jury, about the protections required by Title IX, for a fair disciplinary investigation, which SJU contractually promised, on the basis of collateral estoppel?

**QUESTION NO. 4:** Whether the trial court erred when it ruled that the jury's verdict in favor of SJU as to breach of contract claim was not against the weight of the evidence?

**QUESTION NO. 5:** Whether the trial court erred by denying [Mirabella's] [m]otion *in* [*l*]*imine* precluding his alleged admission of responsibility?

**QUESTION NO. 6:** Whether the trial court erred as a matter of law in finding there was no violation of the [UTPCPL] and/or its non-jury verdict was against the weight of the evidence?

**QUESTION NO. 7:** Whether the trial court erred by failing to grant [Mirabella's] [m]otion *in* [*l*]*imine* and/or post-trial motion for judgment notwithstanding the verdict [("JNOV")] on the grounds that SJU waived all its affirmative defenses to [Mirabella's] defamation claim?

**QUESTIONS NO. 8:** Whether the trial court erred in when it failed to grant [Mirabella] a new trial and/or [JNOV] because the verdict in [the victim's] favor as to [Mirabella's] defamation claim, was against the weight of the evidence[?]

Mirabella's Amended Brief at 3-4 (capitalization, punctuation, and citation format regularized).

Prior to reaching the merits of Mirabella's claims, this Court must determine whether Mirabella preserved any issues for our review. ***See Bank of America, N.A. v. Scott***, 271 A.3d 897, 903 (Pa. Super. 2022) (holding appellate courts may determine *sua sponte* whether issues have been properly preserved on appeal). As our recitation of the procedural history above demonstrates, Mirabella appeared to be confused by the dual jury/bench trial aspect of the case and how it affected post-trial procedures. As a result, he filed two post-trial motions, one of which is arguably untimely, two Rule 1925(b) statements, and two appeals, one of which was quashed but then reinstated and absorbed into the instant appeal. Appellees object to this procedure and seek the dismissal of the instant appeal.

With respect to the timeliness of Mirabella's first post-trial motion, we note it is long settled when an appellant files an untimely post-trial motion

- 11 -

and the trial court declines to address the merits of the motion, the appellant waives all issues on appeal. *See Kennel v. Thomas*, 804 A.2d 667, 668 (Pa. Super. 2002). In this court, Mirabella argues four bases for deeming his first post-trial motion timely filed: (1) he was not required to file a post-trial motion on the jury verdict when the UTPCPL claim was still pending; *see Sampathkumar v. Chase Home Fin., LLC*, 241 A.3d 1122, 1135 (Pa. Super. 2020) (finding where a case is divided into jury and non-jury phases, an appellant can wait until disposition on both parts phases before filing post-trial motions); (2) the victim's praecipe to enter judgment following the expiration of 120 days from judgment was premature because the court entered judgment only on the jury verdict; (3) there is a conflict in Pennsylvania law regarding whether the ten-day clock for filing post-trial motions begins after announcement of the verdict in open court, *see Mammoccio v. 1818 Market Partnership*, 734 A.2d 23, 27 (Pa. Super. 1999), or when the order is placed on the docket, *see contra, Papalia v. Montour Auto Service Co.*, 682 A.2d 343, 345 (Pa. Super. 1996); and (4) there is a conflict in Pennsylvania law regarding this Court's standard of review of a trial court's decision to deny post-trial motions as untimely.

After a thorough review of the record and relevant law, we decline to find waiver on these bases. Even if Mirabella's first post-trial motion was untimely, given the confusion caused by the two separate verdicts, in the interest of judicial economy we will regard as done what ought to have been

done and deem Mirabella's first post-trial motion timely filed. ***See Zitney v. Appalachian Timber Products, Inc.***, 72 A.3d 281, 285 (Pa. Super. 2013).

We next address whether Mirabella preserved any issues for appeal by filing two separate and voluminous Rule 1925(b) statements. ***See***, ***e.g.***, ***Tucker v. R.M. Tours***, 939 A.2d 343, 346 (Pa. Super. 2007) (explaining "[t]he fact [a]ppellants filed a timely [court-ordered] Pa.R.A.P. 1925(b) statement does not automatically equate with issue preservation."). Here, Mirabella's first Rule 1925(b) statement is more than five pages long and consists of eighteen paragraphs. His second Rule 1925(b) statement is more than eleven pages long and consists of thirty-four paragraphs. The statements are argumentative and repetitive in violation of Pa.R.A.P. 1925(b)(4)(iv). Despite this verbosity, the trial court produced a ninety-seven-page opinion.

We have stated:

[P]a.R.A.P. 1925(b) provides that a judge entering an order giving rise to a notice of appeal "may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal [ ]." Rule 1925 also states that ***"[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.***" Pa.R.A.P. 1925(b)(4)(vii). In ***Commonwealth v. Lord***, 553 Pa. 415, 719 A.2d 306 (1998), our Supreme Court held that "from this date forward, in order to preserve their claims for appellate review, [a]ppellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Rule 1925. Any issues not raised in a 1925(b) statement will be deemed waived." ***Lord***, 719 A.2d at 309. This Court has held that "[o]ur Supreme Court intended the holding in ***Lord*** to operate as a bright-line rule, such that 'failure to comply with the minimal

requirements of Pa.R.A.P. 1925(b) will result in automatic waiver of the issues raised.'" ***Greater Erie Indus. Dev. Corp. v. Presque Isle Downs, Inc.***, 88 A.3d 222, 224 (Pa. Super. 2014) (*en banc*) (emphasis in original).

***U.S. Bank, N.A. v. Hua***, 193 A.3d 994, 996-97 (Pa. Super. 2018) (some citations omitted, emphasis added); ***see also Greater Erie Indus. Dev. Corp.***, 88 A.3d at 225 ("it is no longer within this Court's discretion to ignore the internal deficiencies of Rule 1925(b) statement based solely on the trial court's decision to address the merits of those untimely raised issues").

Moreover, "[R]ule 1925 is a crucial component of the appellate process because it allows the trial court to identify and focus on those issues the parties plan to raise on appeal." ***Brown v. End Zone Inc.***, 259 A.3d 473, 485 (Pa. Super. 2021) (citation omitted). Therefore, Rule 1925 requires, in pertinent part, the appellant "***concisely identify*** each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge." Pa.R.A.P. 1925(b)(4)(ii) (emphasis added). "The Statement should not be redundant or provide lengthy explanations as to any error." Pa.R.A.P. 1925(b)(4)(iv). While raising many assertions of error is not dispositive of non-compliance, the issues nonetheless must be "non-redundant, non-frivolous[, and] set forth in an appropriately concise manner" to preserve them for appeal. ***Id***.

Where an appellant refuses to comply with the letter and spirit of Rule 1925, overwhelming the trial court and subverting our ability to conduct meaningful review, he waives all issues on appeal. ***See***, ***e.g.***, ***Mahonski v.***

- 14 -

***Engel***, 145 A.3d 175, 182 (Pa. Super. 2016) (holding where appellant raised over eighty claims of error, the record supported the trial court's finding the "voluminous 1925(b) statements failed to set forth non-redundant, nonfrivolous issues in an appropriately concise manner" and the claims were therefore waived); ***Kanter v. Epstein***, 866 A.2d 394, 401 (Pa. Super. 2004) (holding where the appellants raised more than one hundred issues, they "deliberately circumvented the meaning and purpose of Rule 1925(b)" precluding appellate review).

Mirabella comes close to "circumventing the meaning and purpose" of the Rule. We would be well within our discretion to find he waived all issues on appeal by filing two such discursive Rule 1925(b) statements. However, because we do not believe Mirabella deliberately attempted to subvert Rule 1925(b), the trial court managed to address the issues on appeal, and Appellees briefed those issues, we will, ***in this instance***, excuse Mirabella's noncompliance.

Here, as discussed below, Mirabella raised eight issues but offers little argument to support many of them, fails to point to supporting evidence, incorrectly views the evidence in the light most favorable to himself, misstates the evidence, and often misstates the law. Despite these deficiencies, we endeavor to address the merits of his issues.

Mirabella first challenges the trial court's jury instructions. ***See*** Mirabella's Brief at 35-38.

- 15 -

> We review the trial court's jury instructions for an abuse of discretion or legal error controlling the outcome of the case. A jury charge will be found to be adequate unless, when read in its entirety, the charge confused the jury, misled the jury, or contained an omission tantamount to fundamental error. [I]t must appear that the erroneous instruction may have affected the jury's verdict. Consequently, the trial court has great discretion in forming jury instructions.

*Meyer v. Union R. Co.*, 865 A.2d 857, 862 (Pa. Super. 2004) (citations and quotation marks omitted). Trial courts are not required to use the language of requested jury charges but may utilize different formulations so long as they "adequately and clearly" cover their subjects. *Buckley v. Exodus Transit & Storage Corp.*, 744 A.2d 298, 306 (Pa. Super. 1999). The court may refuse to submit for the jury's consideration a point for charge that is not strictly in accordance with the facts in evidence or the law in the case. *Id*.

Further, a party who does not make an objection in the trial court to the given jury instructions cannot complain about the instructions on appeal. *See Broxie v. Household Finance Co.*, 372 A.2d 741, 743 (Pa. 1977); *Harding v. Consolidated Rail Corp.*, 620 A.2d 1185, 1194 (Pa. Super. 1993). "[A]ll objections to the charge to the jury shall be taken before the jury retires." Pa.R.Civ.P. 227(b); *see also Passarello v. Grumbine*, 87 A.3d 285, 292 (Pa. 2014). If a party fails to raise a specific objection to a jury instruction, he waives the objection and cannot raise it in a subsequent appeal. *See Cruz v. Northeastern Hospital*, 801 A.2d 602, 610–11 (Pa. Super. 2002). We will not consider a claim on appeal which a party did not call to the trial court's attention at a time when the court could have corrected any error. *See Keffer*

- 16 -

*v. Bob Nolan's Auto Service, Inc.*, 59 A.3d 621, 645 (Pa. Super. 2012). "[O]ne must object to errors, improprieties or irregularities at the earliest possible stage of the adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter." *Id*. (citation omitted).

Mirabella argues the trial court erred when it refused to define the terms "fair" and "impartial" to the jury in accordance with this Court's decision in *Boehm*, 573 A.3d at 582, and the Third Circuit's decision in *Doe v. Univ. of the Sciences*, 961 F.3d 203 (3d. Cir. 2020).[5] *See* Mirabella's Brief at 35-38.

Our review of the record demonstrates that Mirabella waived this claim. Mirabella did not request the trial court define the terms "fair" and "impartial" in his proposed points for charge. *See* Mirabella's Proposed Points for Charge, 10/17/23, at 1-3.[6] Additionally, Mirabella did not object to the charge as given. *See id*. at 175, 181. Thus, Mirabella waived his first issue, and we will not further discuss it. *See Cruz*, 801 A.2d at 610–11.

---

[5] "[W]e note that federal district court decisions, as well as those by federal Courts of Appeal, are not binding on Pennsylvania courts." *Sullivan v. Werner Company*, 253 A.3d 730, 745 (Pa. Super. 2021) (citation omitted).

[6] Although the charging conference was not transcribed, when the trial court discussed on the record, at length, what had taken place during the charging conference, there was no mention of this issue and the only dispute Mirabella raised concerned a proposed jury charge on conditional privilege. *See* N.T., 11/3/23, at 2-13.

In his second issue, Mirabella contends the trial court erred in various pre-trial and mid-trial evidentiary rulings which it made concerning the interpretation of the terms of the contract. *See* Mirabella's Brief at 38-49.

The standard of review for challenges to rulings on motions *in limine* is as follows:

> A motion *in limine* is used before trial to obtain a ruling on the admissibility of evidence. It gives the trial judge the opportunity to weigh potentially prejudicial and harmful evidence before the trial occurs, thus preventing the evidence from ever reaching the jury. A trial court's decision to grant or deny a motion *in limine* is subject to an evidentiary abuse of discretion standard of review.

*Parr v. Ford Motor Co.*, 109 A.3d 682, 690 (Pa. Super. 2014) (internal citations and quotations omitted). Additionally, to be admissible, evidence must be relevant; it must have "any tendency to make a fact more or less probable than it would be without the evidence[.]" Pa.R.E. 401. Even if relevant, evidence may be excluded if its probative value is outweighed by, *inter alia*, the danger of unfair prejudice, confusing the issues, or misleading the jury. *See* Pa.R.E. 403; *see also Parr*, 109 A.3d at 696.

Concerning contract interpretation, the Pennsylvania Supreme Court has stated:

> [t]he fundamental rule in contract interpretation is to ascertain the intent of the contracting parties. In cases of a written contract, the intent of the parties is the writing itself. Under ordinary principles of contract interpretation, the agreement is to be construed against its drafter. When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself. When, however, an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is

patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances. A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. While unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of fact.

***Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.***, 905 A.2d 462, 468-69

(Pa. 2006) (internal citations and quotation marks omitted).

Mirabella argues the trial court erred when it denied his pre-trial motions *in limine* to: (1) find as a matter of law the factual findings of SJU's investigation did not meet the SMP's definition of "sexual assault" (***see*** Mirabella's Brief at 38-42), and (2) find as a matter of law the term "official" applied to the investigator (***see id***. at 42-44). Mirabella also asserts the trial court did not rule as a matter of law that SJU's investigation did not comply with the SMP because the investigator did not interview witnesses or exam relevant documents (***see id***. at 44-49).[7]

The trial court determined Mirabella's claim that the SJU investigation's findings did not meet the SMP's definition of sexual assault did not merit relief. It stated:

> [Attorney] Malloy determined that the kissing between [the victim and Mirabella] was mutually consensual. However, [Attorney] Malloy also found that [Mirabella's] placement of his hands around [the victim's] neck and squeezing was a separate act that required a separate consent from the kissing. [The

---

[7] Mirabella fails to cite to the record and does not specify which of the many motions *in limine* he filed are addressed in this issue; thus, we, like the trial court, ***see*** Trial Court 1925(a) Opinion, 9/23/24, at 21-35, are forced to guess which motions are at issue.

victim] stopped kissing [Mirabella] when he started squeezing her neck. [The victim] freezing directly implicates the excerpted definitions of consent, which state that absence of resistance cannot be interpreted as consent for an activity. [Attorney] Malloy further noted that the throat is not typically considered an "intimate body part," but because the squeezing of the neck occurred while the students were kissing, it constituted general "sexual contact."

One aspect that [Mirabella's] counsel focused on during testimony was intent to cause harm. However, the SMP does not require intent to cause harm for a [r]espondent to be found responsible for a violation of the Policy. Moreover, the slide from the presentation that [c]ounsel focused on did not include intent to cause harm as an element only that the act was intentional. [Attorney] Malloy clarified that she did not apply this definition of misconduct, as she based her determination on the SMP. She explained that her understanding was that the act had to be "intentional as opposed to bumping into somebody in an elevator."

Here, . . . [Mirabella's] motion *in limine* was premature because there were genuine issues of fact relating to whether [Attorney Malloy's] findings fell within the definition of "sexual assault." However, by the end of trial, it was clear that [Mirabella] was not entitled to judgment as a matter of law because [Attorney Malloy] was able to satisfactorily explain how her findings fell within the definitions of the SMP.

Trial Court Opinion, 6/24/24, at 20-21 (most quotation marks and all footnotes omitted).

The trial court also rejected Mirabella's claim that the term "official" as used in the SMP applied to the investigator. It explained:

[t]he SMP does not define the terms "Official" or "Investigator." However, a simple, plain word reading of the [SMP] makes the distinction clear. In its motion *in limine* ruling relating to this issue), the [trial c]ourt specifically pointed to Section V.B.5 of the SMP.

This section begins:

> Upon completion of the investigation, **_the Investigator shall report to the appropriate University official(s)_**. If during the course of the investigation other conduct that might be a violation of this or other University policies is discovered or identified, this additional conduct **_must be reported to the appropriate University official(s)_** and may be subject to a separate process. . . .

In this section, the role of an Investigator is distinguished from that of University officials twice. However, this is not the only portion of the SMP that distinguishes between the two. Two pages earlier, a paragraph in Section V.B.2 relating to Advisors reads:

> The University may remove or dismiss an Advisor who becomes disruptive or who does not abide by the restrictions on their participation, as determined by the person conducting the meeting (**_university official and/or investigator_**).

Once again, the drafters of the SMP drew a distinction drawn between a university official and an investigator, as there would be no need to include "and/or investigator" if the term "investigator" were already subsumed under the umbrella term "university official."

> In short, although the exact definition of each position is ambiguous, and therefore best left for the [j]ury as factfinders to determine, the distinction between the positions is not ambiguous. **_See Com. v. UPMC_**, 208 A.3d 898 (Pa. 2019). To be clear, the [t]rial [c]ourt did not intrude on the [j]ury's purview by ruling on what each position entailed. It did, however, rule that there was an obvious and unambiguous distinction between the two terms, based on a plain reading of SJU's SMP.

**_Id_**. at 38-39 (record citations and some emphases omitted, other emphases in original).

Lastly the trial court concluded Attorney Malloy had examined witnesses and reviewed documents in accordance with the SMP. It noted:

[Attorney] Malloy conducted interviews with [the victim] and [Mirabella]. Both students stated that they were alone in the room when they were kissing. [Mirabella] specifically acknowledged that they went to the room on the 3rd floor of [his dormitory] because his roommates were in his room. There were no witnesses to the kissing or the squeezing. In his pre-trial deposition, [Mirabella] stated that he did not know of any witnesses or evidence overlooked in the investigation, and he reaffirmed this at trial. [Attorney] Malloy did not interview any students other than [the victim] and [Mirabella], because no one else had any firsthand knowledge about what occurred in the room.

During her meeting, [the victim] acknowledged that she texted a friend their safe word to create an excuse to leave. She provided these text messages to [Attorney Malloy] three days after their meeting. [Attorney] Malloy later reviewed these text messages, the photographs of [the victim's] neck shortly after the encounter with [Mirabella], notes provided by [Mirabella], and the [c]omplaint prepared by Dr. Perry.

\* \* \* \* \*

Given that the encounter at issue in [the victim's] complaint was witnessed by no other person, and there was little physical evidence, the [t]rial [c]ourt determined there was sufficient evidence to conclude that [Attorney Malloy] carried out her duty to interview all witnesses and reviewed all evidence available to her. As such, the motion *in limine* was properly denied. When viewing the trial evidence in the light most favorable to SJU as the verdict winner, the record and reasonable inferences from [Attorney Malloy's testimony sufficiently support the [j]ury's verdict.

*Id*. at 23-24 (footnotes omitted).

We have thoroughly reviewed the record and the law and discern no abuse of discretion on the part of the trial court.

First, although Attorney Malloy and the trial court stated to the contrary, our Supreme Court has held that the neck is a "sexual or other intimate part[]"

- 22 -

under Pennsylvania's indecent assault statute, 18 Pa.C.S.A. § 3126. *See Commonwealth v. Gamby*, 283 A.3d 298, 314 (Pa. 2022); *see also Commonwealth v. Luis Tepo-Martinez*, --- A.3d ---, 2025 WL 3560510, at *3 (Pa. Super., Dec. 12, 2025) (citing *Gamby* and affirming Tepo-Martinez's conviction for indecent assault where he kissed and touched the victim's neck, an intimate part of the body, without her consent). Given this case law, it is clear that Mirabella's non-consensual squeezing of the victim's neck while kissing violated the SMP. The SMP defines "sexual assault" as "[h]aving sexual intercourse or sexual physical contact with another individual by the use or threat of force or coercion, *without consent*, or where the individual is incapacitated." SMP at 6 (emphasis added). The SMP includes "*any non-consensual sexual contact, including any improper touching of intimate body parts*." *Id*. at 7 (emphasis added).

Moreover, our review of the plain language of the SMP accords with the trial court's interpretation, as it clearly distinguishes between an official and an investigator but does not define either role. *See* Trial Court Opinion, 6/24/24, at 38-39. Thus, the trial court correctly found the definition of both roles a question of fact for the jury, while whether an investigator was an official was a question of law to be determined by the trial court. *See Ins. Adjustment Bureau, Inc.*, 905 A.2d at 468-69 (Pa. 2006); *see also Kalili v. State Farm Fire and Casualty Company*, 330 A.3d 396, 403 n.3 (Pa.

Super. 2024) ("The interpretation of the terms of a contract are a matter of law for the court, not a question of fact for the jury").

Lastly, while Mirabella now vaguely identifies various witnesses and documents he believes Attorney Malloy should have investigated, he does not point to any place in the record where this information could be found. It is not this Court's function to pour through the voluminous record in this case looking for the facts to substantiate his claim. *See Commonwealth v. Mulholland*, 702 A.2d 1027, 1034 n.5 (Pa. Super. 1997) ("In a record containing thousands of pages, this court will not search every page to substantiate a party's incomplete argument"). Mirabella's second claim does not merit relief.

In his third issue, Mirabella maintains the trial court erred in ruling he could not introduce evidence or make any reference to Title IX. *See* Mirabella's Brief at 49-52. Mirabella complains this ruling "was the equivalent to summary judgment as to [his] claims that SJU breached its contractual promise to comply with Title IX." *Id*. at 49. Mirabella argues that the federal court's dismissal of his Title IX complaint is not the equivalent of a ruling that the school complied with Title IX. *See id*. at 50.

Mirabella's claim implicates principles of collateral estoppel.

> [C]ollateral estoppel . . . presents a question of law. Like all questions of law, our standard of review is *de novo* and our scope of review is plenary.

* * * * *

Collateral estoppel is valid if, (1) the issue decided in the prior adjudication was identical with the one presented in the later action, (2) there was a final judgment on the merits, (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication, and (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action. . . . [A]ll four elements must be present.

***Gregg v. Ameriprise Financial, Inc.***, 195 A.3d 930, 935-36 (Pa. Super. 2018) (internal citations, quotation marks, and brackets omitted, brackets added).

The trial court explained:

[i]n this case, [SJU] moved to preclude evidence relating to Title IX under the doctrines of *res judicata* and collateral estoppel. Although the [trial c]ourt's ruling during the [m]otions [h]earing . . . focused on collateral estoppel, all elements of both doctrines are met when considering [the United States District Court for the Eastern District of Pennsylvania ("District Court)]'s summary judgment ruling. First, the issue is identical: whether [SJU] violated Title IX in its application of the [SMP] and its investigation into the allegations against [Mirabella]. Second, all parties and their capacities in the federal case and the present case were identical, as the case at bar was simply a jurisdictional shift of the case after the federal ruling. Third, the causes of action were identical, as [Mirabella] based his breach of contract claims in part on a Title IX violation, in particular a "Dear Colleague Letter." Fourth, the issue of Title IX resulted in a final judgment on its merits, as [the District Court] issued a 28-page order, thoroughly addressing each of the three motions for summary judgment brought by all parties. Finally, [Mirabella], as the party against whom collateral estoppel was raised, was the plaintiff in the federal phase of this case, and he had a full and fair opportunity to litigate the Title IX issue in the [] district court and on appeal to the [United States Court of Appeals for the] Third Circuit.

Moreover, the issue of compliance with Title IX was addressed by the federal court and the federal appellate court while the case was pending within [the trial court]. The [trial c]ourt's decision to preclude Title IX maintained consistency and

- 25 -

the expectations of the parties throughout the case. It also served to streamline the process, as the state level court did not need to rehear arguments on a federal issue that had already had thorough arguments and received a decision from a federal appellate court.

Trial Court 1925(a) Opinion, 9/23/24, at 47-48.

After a thorough review of the record and applicable law, we conclude the trial court was correct in its legal conclusion that Mirabella was collaterally estopped from presenting evidence with respect to Title IX. Moreover, Mirabella's argument on this issue is undeveloped.

We note that except for two brief citations to boilerplate regarding Title IX, Mirabella neither discusses the elements of Title IX nor cites any pertinent law to support his argument. *See* Mirabella's Brief at 49-52. Instead, Mirabella asserts that a finding he failed to prove SJU violated Title IX is not the same as a finding SJU complied with Title IX. *See* Mirabella's Brief at 50. However, Mirabella was the plaintiff in the federal action and failed to satisfy his burden to prove a Title IX violation. Thus, we see no discrepancy and reject Mirabella's argument.

The sole case Mirabella cited in support of his argument the trial court erred as a matter of law in granting the motion *in limine* is **Doe v. Franklin and Marshall College**, 2024 WL 3937264 (E.D. Pa., Aug. 26, 2024). As an unpublished federal district court case, **Franklin and Marshall**, is, at most, citable for any persuasive authority it offers. **See Sullivan v. Werner Co.**, 253 A.3d at 745. Moreover, in **Franklin and Marshall**, the district court

***granted*** summary judgment in favor of the defendant on the plaintiff's Title IX claims but denied summary judgment on the breach of contract claims, which included ***a specific claim that the defendant breached its contract with plaintiff by violating the portion of its sexual misconduct policy which promised compliance with Title IX***. ***See Franklin and Marshall***, 2024 WL 3937264, at \*8-\*11, \*13. There is no indication that either party raised or argued collateral estoppel in that case. While Mirabella claims one of his breach of contract claims was identical to that on which the ***Franklin and Marshall*** court denied summary judgment, he does not cite where that claim can be found in the certified record, and we have been unable to locate it. Mirabella's third claim does not merit relief.

In his fourth claim, Mirabella contends the jury's verdict that SJU did not breach its contract with him was against the weight of the evidence. ***See id***. at 53-55.

> We recognize:
>
> The decision to grant or deny a motion for a new trial based upon a claim that the verdict is against the weight of the evidence is within the sound discretion of the trial court. Thus, the function of an appellate court on appeal is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying question of the weight of the evidence. An appellate court may not overturn the trial court's decision unless the trial court palpably abused its discretion in ruling on the weight claim. Further, in reviewing a challenge to the weight of the evidence, a verdict will be overturned only if it is so contrary to the evidence as to shock one's sense of justice.

\* \* \* \* \*

> A trial court's determination that a verdict was not against the interest of justice is [o]ne of the least assailable reasons for denying a new trial. A verdict is against the weight of the evidence where certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

***Tong-Summerford v. Abington Memorial Hospital***, 190 A.3d 631, 659 (Pa. Super. 2018) (internal citations and quotation marks omitted).

Here, Mirabella avers the jury was wrong in finding the evidence showed the investigation and disciplinary proceeding was fair and impartial and thus, SJU did not breach its contract with Mirabella. ***See id***. at 54.

The trial court found the jury's verdict was not against the weight of the evidence. ***See*** Trial Court 1925(a) Opinion, 9/23/24, at 70-71. It specifically noted Mirabella's own testimony "he was unaware of any additional procedural rights he was entitled to but did not receive." ***Id***. at 70. The court also pointed to Mirabella's initials on the pre-investigation checklist which advised of his right to reasonable accommodations of his disability, his right to an advisor/and or counsel, his right to object to a particular investigator and to seek clarifications from the Office of Community Standards regarding the process. ***See id***. at 70-71. The court stated Mirabella failed to avail himself of any of these rights. ***See id***. The court concluded Mirabella could not now complain that SJU breached its contract with him when he made the ***choice*** not to avail himself of offered protections and therefore, the jury's verdict was not against the weight of the evidence. ***See id***. at 71.

Mirabella does not cite to any law to support his contention the verdict was against the weight of the evidence. His claim, in its entirety, is based upon viewing the evidence in the light most favorable to himself and asking this Court to reweigh the evidence. This we cannot do. Our review demonstrates the record supports the trial court's analysis. The court did not "palpably abuse its discretion" in denying Mirabella's weight of the evidence claim. **Tong-Summerford**, 190 A.3d at 659. Mirabella's fourth issue does not warrant relief.

In his fifth issue, Mirabella maintains the trial court erred in denying his motion *in limine* to preclude the admission of his acceptance of responsibility during the litigation. **See** Mirabella's Brief at 55-57. This admission occurred during the March 2018 interview with Attorney Malloy when Mirabella stated he did not recall squeezing the victim's neck but did not want to call her a liar and took responsibility for his actions.

As noted above, we review a challenge to a motion *in limine* for an abuse of discretion. **See Parr**, 109 A.3d at 690. To be admissible evidence must be relevant, but even relevant evidence may be excluded if it is unfairly prejudicial. **See** Pa.R.E. 401, 402, 403; **see also Parr**, 109 A.3d at 696.

Mirabella contends at the time he made the statement he was unaware this interview was the equivalent of a hearing, and, in any event, his statements did not constitute an admission of guilt. **See** Mirabella's Brief at 55-56. Mirabella states the trial court's admission of his statements to

Attorney Malloy was the equivalent of violating his Fifth Amendment right against self-incrimination. *See id*. at 57.

In its discussion, the trial court states Mirabella sought to preclude Attorney Malloy's testimony on this issue on the basis that it was hearsay. *See* Trial Court Opinion, 6/24/24, at 41-43. The trial court does not mention or discuss any claim that the admission of Mirabella's statement violated his Fifth Amendment rights or that it did not constitute an admission of guilt. *See id*.

In his brief, Mirabella abandons the hearsay claims. Moreover, he does not cite to the record or explain where he preserved the claims regarding the Fifth Amendment or that the statement did not constitute an admission of guilt. We have been unable to locate any place where Mirabella preserved this argument. It is well and colorfully stated that "[j]udges are not like pigs, hunting for truffles buried in briefs-or, for that matter, in the thousands of pages of record that accompany them." *Langman v. Keystone Nat'l Bank & Trust Co.*, 672 F.Supp.2d 691, 694 (E.D. Pa. 2009) (citation omitted). It is further settled that an appellant cannot raise a new legal theory for the first time on appeal. *See* Pa.R.A.P. 302(a). Thus, Mirabella waived his fifth issue.[8]

_____

[8] In any event, Mirabella's undeveloped argument on this issue would not merit relief. Mirabella's reliance on *Commonwealth v. Rivera*, 296 A.3d 1141, 1155 (Pa. 2023), is misplaced. In *Rivera*, our Supreme Court engaged in a lengthy review of Pennsylvania law concerning the admission of testimony concerning a criminal defendant's pre-arrest and post-arrest silence. *See*
*(Footnote Continued Next Page)*

In his sixth issue, Mirabella challenges both the sufficiency and weight of the evidence underlying the trial court's finding that SJU did not violate the UTPCPL. *See* Mirabella's Brief at 57-63.

> Our standard of review in non-jury trials is to assess whether the findings of facts by the trial court are supported by the record and whether the trial court erred in applying the law. Upon appellate review the appellate court must consider the evidence in the light most favorable to the verdict winner and reverse the trial court only where the findings are not supported by the evidence of record or are based on an error of law. Our scope of review regarding questions of law is plenary.

*Robins v. Robins*, 338 A.3d 184, 188 (Pa. Super. 2025) (citation omitted).

> As discussed above:
>
> this Court's review of a weight claim is a review of the trial court's exercise of discretion, not of the underlying question of whether we believe that the verdict is against the weight of the evidence. Moreover, a new trial will be granted on the basis that [a] verdict is against the weight of the evidence only when the verdict is so contrary to the evidence as to shock one's sense of justice.

*Krishnan v. Cutler Group, Inc.*, 171 A.3d 856, 881 (Pa. Super. 2017) (internal citations, quotation marks, and some brackets omitted).

> The UTPCPL is Pennsylvania's consumer protection law and seeks to prevent unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . . The purpose of the UTPCPL is to protect the public from unfair or deceptive business practices. Our Supreme Court has stated

_____

*Rivera*, 296 A.3d at 1150-58. Even if we were to assume, *arguendo*, that this criminal case has some bearing on a private university's internal investigation procedures, Mirabella has failed to cite to any portion of the record wherein he invoked any right to silence. Instead, as discussed above, he was advised of the various rights offered by SJU in the SMP and chose not to invoke them. Thus, even if not waived, this claim is meritless.

courts should liberally construe the UTPCPL in order to effect the legislative goal of consumer protection.

> The UTPCPL provides a private right of action for anyone who suffers **any ascertainable loss of money or property** as a result of an unlawful method, act or practice. . .. The UTPCPL also contains a catchall provision at 73 P.S. § 201–2(4)(xxi). . . . In 1996, the General Assembly amended the UTPCPL and revised Section 201–2(4)(xxi) to add deceptive conduct as a prohibited practice. The current catchall provision proscribes fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.
>
> * * * * *
>
> Nevertheless, to establish a claim under the UTPCPL, a plaintiff must still plead and prove justifiable reliance and causation, because the legislature never intended [the] statutory language directed against consumer fraud to do away with the traditional common law elements of reliance and causation.

**American Express Bank, FSB v. Martin**, 200 A.3d 87, 94-95 (Pa. Super. 2018) (internal quotation marks and citation omitted, emphasis added).

"The UTPCPL provides a private cause of action to any person who, as a result of conduct that the UTPCPL prohibits, suffers any ascertainable loss of money or property, real or personal. To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." **McCabe v. Marywood University**, 166 A.3d 1257, 1263 (Pa. Super. 2018) (internal quotation marks and citations omitted).

Mirabella argues the trial court erred in failing to find violations of Section 201-2(4)(xxi) ("the catchall provision") of the UTPCPL. **See**

Mirabella's Brief at 57-63. Mirabella also contends the verdict was against the weight of the evidence. *See id*. at 63.

The trial court concluded Mirabella failed to show any deceptive acts by SJU and in his proposed findings of facts misrepresented testimony and exhibits and failed to prove SJU: (1) misrepresented the definition of "sexual assault;" (2) failed to fully explain its disciplinary process; and (3) failed to conduct a fair and impartial investigation. *See* Trial Court Opinion, 9/23/24, at 36. Critically, the court also found Mirabella "failed to prove that he suffered any ascertainable loss." *Id*. The court noted that, while Mirabella claimed he suffered economic loss by having to pay for the Spring 2018 semester and transferring to a more expensive college, it was his choice both to transfer and to choose a more expensive school. *See id*. at 36-37. The court pointed out that the Spring tuition was not an ascertainable loss because Mirabella was able to attend classes, all disciplinary proceedings were scheduled around his academic courses, and with respect to the missed trip to Ireland, the school gave him an alternate assignment, so missing the trip would not harm his grade. *See id*. at 37. Moreover, Mirabella himself could not recall if his parents paid for the trip or if it was covered by his scholarship. *Id*.

Our review of the record supports the trial court's findings. Mirabella's argument consists of a lengthy list of purportedly deceptive practices engaged in by SJU. *See* Mirabella's Brief at 57-63. However, Mirabella fails to cite to any evidence which supports his claim, views the fact in the light most

favorable to himself, and relies on bald conclusions that he suffered an ascertainable loss. This is simply insufficient to meet his burden of proof under the UTPCPL. *See American Express Bank, FSB*, 200 A.3d at 94-95; *McCabe*, 166 A.3d at 1263.

As to the weight of the evidence, the trial court sat as the finder of fact with respect to the UTPCPL claim, as such, its verdict is entitled to the same weight as that of a jury. *See Fletcher-Harlee Corp. v. Szymanski*, 936 A.2d 87, 92-93 (Pa. Super. 2007). The trial court determined that Mirabella had not met the elements necessary to prove his UTPCPL claim and thus, its verdict was not against the weight of the evidence. *See* Trial Court Opinion, 9/23/24, at 39-43. We have no basis to disturb this conclusion. Mirabella's sixth claim does not merit relief.

In his seventh claim, Mirabella argues the trial court in denying his motion *in limine* and/or denying his motion for judgment notwithstanding the verdict ("JNOV") with respect to SJU's affirmative defense of conditional privilege in response to his defamation claim. *See* Mirabella's Brief at 63-66.

As discussed above, we review the denial of a motion *in limine* for abuse of discretion. *See Parr*, 109 A.3d at 690. With respect to motions for JNOV:

> [o]ur standard[s] of review when considering the motions for a directed verdict and [JNOV] are identical. We will reverse a trial court's grant or denial of [JNOV] only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Further, the standard of review for an appellate court is the same as that for a trial court.

There are two bases upon which [JNOV] can be entered; one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that, even with all factual inferences decided adverse to the movant, the law nonetheless requires a verdict in [its] favor. Whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Hall v. Episcopal Long Term Care*, 54 A.3d 381, 395 (Pa. Super. 2012) (citations omitted).

Moreover, where a defendant did not request a binding charge on the jury, move for a directed verdict orally or in writing at the close of evidence at trial, or move for a compulsory nonsuit, he waives the ability to seek JNOV. *See Phelps v. Caperoon*, 190 A.3d 1230, 1247 (Pa. Super. 2018). However, if the trial court fails to find waiver and addresses the merits of the issue, we are not required to find waiver. *See Capital Care Corp. v. Hunt*, 847 A.2d 75, 84 (Pa. Super. 2004) (declining to find waiver where a party failed to move for a directed verdict, sought JNOV in a post-trial motion, and the trial court addressed the claim as presented in the post-trial motion).

The Pennsylvania Rules of Civil Procedure provide:

[e]xcept as provided by subdivision (b), *all affirmative defenses* including but not limited to the defenses of accord and satisfaction, arbitration and award, consent, discharge in bankruptcy, duress, estoppel, failure of consideration, fair comment, fraud, illegality, immunity from suit, impossibility of performance, justification, laches, license, payment, *privilege*, release, *res judicata*, statute of frauds, statute of limitations, truth and waiver *shall be pleaded* in a responsive pleading under the heading "New Matter". A party

may set forth as new matter any other material facts which are not merely denials of the averments of the preceding pleading.

Pa.R.Civ.P. 1030(a) (emphases added). However, this Court has held that a party need not specifically name an affirmative defense "if facts sufficient to constitute the defense are pled." *Village of Four Seasons Ass'n, Inc. v. Elk Mountain Ski Resort, Inc.*, 103 A.3d 814, 821 (Pa. Super. 2014) (citation omitted).

The elements of a defamation claim in Pennsylvania require a plaintiff to prove: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. *See* 42 Pa.C.S.A. § 8343(a); *Joseph v. Scranton Times L.P.*, 129 A.3d 404, 424 (Pa. 2015). When the issue is properly raised by the plaintiff, the defendant has the burden of proving the following elements: (1) the truth of the defamatory communication, (2) the privileged character of the occasion on which it was published, and/or (3) the character of the subject matter of defamatory comment as of public concern. *See* 42 Pa.C.S. § 8343(b); *Joseph*, 129 A.3d at 424-25.

"An appellate court will address only those issues properly presented and developed in an appellant's brief as required by our Rules of Appellate Procedure." Pa.R.A.P. 2101. Where defects in a brief impede our ability to

conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived." ***Sephakis v. Pa State Police Bureau of Records and Identification***, 214 A.3d 680, 686 (Pa. Super. 2019) (internal quotation marks and citation omitted).

Mirabella devotes the majority of his brief argument on this issue to challenging the trial court's assertion SJU was not required to raise conditional privilege in its answer and new matter. ***See*** Mirabella's Brief at 64-66. However, he only devotes two bare sentences (and fails to cite to any cases), to support his contention that he made out the elements of a defamation claim. ***See id***. Mirabella states:

> [t]he record from the trial before the [trial] court from the testimony of SJU officials that communicated that [Mirabella] choked another student and committed sexual assault, which the school entered into his academic record and its impact upon him easily satisfied the *prima facie* elements of a defamation *per se* claim and was all that was necessary to prevail against a defendant without a legal defense.

***Id***. at 65-66 (record citation omitted).

The trial court acknowledged that affirmative defenses are supposed to be pleaded in a new matter. ***See*** Trial Court Opinion, 9/23/24, at 85. However, it cited to ***Village of Four Sesons Ass'n, Inc.***, ***supra***, for the proposition that "if sufficient facts to constitute the defense are pled in the answer, there is no need to raise the defense separately in a new matter." ***Id***. The court recognized SJU did not separately plead the defense but noted that, in his complaint, Mirabella alleged SJU's communications were not

covered by privilege and SJU specifically denied that assertion in its answer.
**See id**.  In any event, the trial court maintains any error was harmless.

Mirabella failed to develop any claim that the trial court erred in finding any error harmless.  His claim that an official investigation by a university in and of itself constitutes defamation *per se* is both factually and legally unsupported.  We  therefore find he waived this claim, and his seventh issue does not merit relief.

Because we agree with the trial court that any error was harmless, we do not address the question of whether SJU sufficiently pled the affirmative defense of conditional privilege in their answer and new matter.

In his eighth and final issue, Mirabella contends the trial court erred in not granting him a new trial on the basis that the verdict was against the weight of the evidence.  **See** Mirabella's Brief, at 66-68.

Our Supreme Court has explained:

> While a jury's verdict and damages award are generally insulated from challenge, the grant of a new trial may be required to achieve justice in those instances where the original trial, because of taint, unfairness, or error, produces something other than a just and fair result, which is the principle goal of judicial proceedings. . .. [A] jury verdict may be set aside as inadequate when it appears to have been the product of passion, prejudice, partiality, or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff.  Where the jury's verdict is so contrary to the evidence as to shock one's sense of justice a new trial should be awarded.   [The Court] cautioned that it was within the province of the jury to assess the worth of the testimony and to accept or reject the estimates  given by the witnesses, and if the verdict bears a reasonable resemblance to

the proven damages, it is not the function of the court to substitute its judgement for the jury's. . ..

***Mader v. Duquesne Light Co.***, 241 A.3d 600, 612-13 (Pa. 2020) (internal citations and quotation marks omitted).

Our standard of review regarding a trial court's denial of a motion for a new trial is limited: "The power to grant a new trial lies inherently with the trial court and we will not reverse its decision absent a clear abuse of discretion or an error of law which controls the outcome of the case." ***Maya v. Johnson & Johnson***, 97 A.3d 1203, 1224 (Pa. Super. 2014) (citation omitted). First, we determine if an error occurred, and if so, ascertain "whether the error resulted in prejudice necessitating a new trial[.]" ***Czimmer v. Janssen Pharmaceuticals, Inc.***, 122 A.3d 1043, 1051 (Pa. Super. 2015) (citation omitted). Second, we ascertain whether the error affected the verdict. ***Knowles v. Levan***, 15 A.3d 504, 507 (Pa. Super. 2011). The "[c]onsideration of all new trial claims is grounded firmly in the harmless error doctrine[.]" ***Id***. (citation omitted).

Mirabella maintains the jury's verdict in favor of the victim on his defamation claim was against the weight of the evidence. ***See*** Mirabella's Brief at 66-68. Mirabella claims that the victim's report was defamation *per se* because the bruises on her neck did not appear until 36 hours later and Mirabella alleged they were caused by an intervening event. ***See id***. at 66. Viewing the evidence in the light most favorable to himself, Mirabella argues

the jury should have credited the testimony of **his** expert that the bruises could not have been caused by Mirabella's assault. **Id**. at 67.

The trial court disagreed, finding the jury's verdict was not against the weight of the evidence. **See** Trial Court Opinion, 9/23/24, at 71-72.

Mirabella's argument on this issue is undeveloped. Mirabella fails to discuss the elements of defamation, fails to explain what evidence supports his claim that the victim defamed him, and fails to point to any legal support for his contention that her actions constituted defamation *per se*. **See** Mirabella's Brief at 66-68. Instead, Mirabella only discusses his expert's testimony that squeezing the victim's neck could not have caused her bruising. However, "it was in the province of the jury to assess the credibility of [the victim] and the other testifying witnesses and decide the weight such testimony should be given." **Koziar v. Rayner**, 200 A.3d 513, 521 n.10 (Pa. Super. 2018). "Assessments of credibility and conflicts in evidence are for the trial court to resolve; this Court is not permitted to reexamine the weight and credibility determinations or substitute our judgments for those of the factfinder." **Gutteridge v. J3 Energy Group, Inc.**, 165 A.3d 908, 916 (Pa. Super. 2017) (*en banc*) (internal citation omitted). Mirabella's final claim does not merit relief.[9]

_____

[9] At oral argument, this Court questioned Mirabella about the factual and legal bases underlying his defamation claim against the victim. Counsel initially stated he was not prepared to address this issue at argument. When pressed,
*(Footnote Continued Next Page)*

For the reasons discussed above, we find Mirabella's claims are waived and/or meritless. Accordingly, we affirm the judgment.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/20/2026

---

counsel was unable to discuss any law which supported his position that it is defamation *per se* when a victim reports a sexual assault to the appropriate authorities or texts a friend a "safe word" when she needs assistance. We wish to make abundantly clear that Mirabella's argument is both frivolous and dangerous.